ELIZABETH A. STRANGE
First Assistant
District of Arizona
MICHAEL JETTE
Assistant U.S. Attorney
Arizona State Bar #021843
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Michael.jette@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>SETH NICHOLS,<br><br>Defendant. | No. 18-wi-00009-01-CKJ (BGM)<br>CR 18-167-CKJ (BGM)<br><br>PLEA AGREEMENT |

The United States of America and the defendant agree to the following disposition of this matter:

## PLEA

The defendant agrees to plead guilty to the Information charging the defendant with a violation of 18 U.S.C. § 1344, Bank Fraud, a felony.

## ELEMENTS OF THE OFFENSE

Bank Fraud (18 U.S.C. § 1344)

1. The defendant knowingly executed, or attempted to execute, a scheme or artifice to defraud a financial institution;

2. To obtain any of the moneys, funds, credits, assets, securities, or other property owned by, under the custody or control of a financial institution;

3. By means of false or fraudulent pretenses, representations, or promise.

## STIPULATIONS, TERMS AND AGREEMENTS

### Maximum Penalties

A violation of 18 U.S.C. § 1344, Bank Fraud, is punishable by a maximum fine of $1,000,000.00, or a maximum term of imprisonment of thirty (30) years, or both, plus a term of supervised release of three years and a special assessment of $100. The special assessment is due and payable at the time the defendant enters the plea of guilty, and must be paid by the time of sentencing unless the defendant is indigent. If the defendant is indigent, the special assessment will be collected according to Title 18, United States Code, Chapters 227 and 229.

### AGREEMENTS REGARDING SENTENCE

1. **The defendant and the government agree to a sentencing range from 0 to 60 months.** The defendant and the government agree the loss for United States Sentencing Guideline purposes under §2B1.1, no more than $3,000,000. The defendant and the government further agree that all criminal and civil matters arising out this conduct are resolved by this plea against the defendant only. In exchange for this global settlement, the defendant, his family, or related legal entities agree to provide certain replacement properties pursuant to 18 USC §3664(e)(4)(A) which are defined below as the "Restitution Assets." The list of "Restitution Assets" listed below is not intended to be an exclusive list from which restitution may or will be paid. Instead, the defendant, his family, and their related entities will remain responsible for any and all amounts of restitution determined to still be owed, after applying or giving credit for the Restitution Assets. The defendant's family and related entities have committed to working with the victims to pay all monies owed, if any amounts remain owed, after application of the Restitution Assets. To the extent <u>a civil action</u> is required to collect such unpaid sums, it is not being waived or released by this Agreement.

2. <u>Guideline Calculations</u>: Although the parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. §

3553(a) in imposing a sentence, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate and agree that the below guideline calculations are appropriate for the charge for which the defendant is pleading guilty:

| | | |
|---|---|---|
| Base Offense Level: | 2B1.1(a)(1) | 7 |
| Loss Amount | 2B1.1(b)(1)(I) | +16 |
| Financial Hardship | 2B1.1(b)(2)(A) | +2 |
| Aggravating Role | 3B1.1(c) | +2 |
| Acceptance of Responsibility | 3E1.1 | -3 |
| Early Disposition/Government Savings | 5K3.1/5K2.0 | -4 |
| Total Adjusted Offense Level: | | 20 |

3. <u>Sentencing Range</u>: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government and the defendant stipulate and agree that the following are the applicable guideline ranges for the offense, based on the defendant's criminal history category (CHC):

| | |
|---|---|
| CHC I: | a sentencing range of 33-41 months imprisonment. |
| CHC II: | a sentencing range of 37-46 months imprisonment. |
| CHC III: | a sentencing range of 41-51 months imprisonment. |
| CHC IV: | a sentencing range of 51-63 months imprisonment. |
| CHC V: | a sentencing range of 63-78 months imprisonment. |
| CHC VI: | a sentencing range of 70-87 months imprisonment. |

4. **The defendant may withdraw from the plea agreement if he/she receives a sentence that exceeds 60 months.**

5. The parties agree that the defendant had an aggravated role in the offense for the purpose of role analysis under U.S.S.G. §§ 3B1.1 and 3B1.2.

6. If the Court, after reviewing this plea agreement, concludes any provision is inappropriate under Fed. R. Crim. P. 11(c)(5), it may reject the plea agreement, giving the defendant, in accordance with Fed. R. Crim. P. 11(d)(2)(A), an opportunity to withdraw the defendant's guilty plea.

7. The defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences may be the subject of a separate judicial or administrative proceeding, and the defendant has discussed the direct and collateral implications this plea agreement may have with his or

her defense attorney. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is defendant's automatic removal from the United States.

## PLEA ADDENDUM

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contained all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal. Accordingly, additional agreements, if any, may not be in the public record.

## WAIVER OF DEFENSES AND APPEAL RIGHTS

The defendant waives any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the information or indictment, or to the petition to revoke, or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant providing the sentence is consistent with this agreement. The sentence is in accordance with this agreement if the sentence imposed is within the stipulated range or below the stipulated range if the Court grants a variance. The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his/her conviction or sentence in this case. If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon motion of the government, be remanded to the

district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar a claim by the defendant of ineffective assistance of counsel.

## RESTITUTION

For purposes of 18 U.S.C. § 3663A, the victims of the offense and relevant conduct pursuant to the plea agreement are Marana Stockyard & Livestock Market, Inc. ("MSY"), Clay and Karen Parsons (collectively, the "Victims").

Pursuant to 18 U.S.C. § 3663A, the Parties agrees that the defendant shall pay restitution, compensatory in nature, of which amount the Government and the defendant anticipate they may come to an agreement in advance of sentencing for any actual losses that the defendant's offense of conviction directly and proximately caused the Victims. The Parties agree that any restitution owed to the victims must be offset by the net sale proceeds derived from, or the appraised or other agreed-upon value, of certain assets and properties that the defendant, his family and/or their related entities, including, without limitation, Nichols Family Trust and Nichols Family Investments, LLC, have transferred to the victims already and in the future (the "Restitution Assets"). The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as ground to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

The Restitution Assets to help satisfy the restitution amount, include, but are not limited to the following:

A. The determined value of real property located in Pinal County, Arizona, known as "Parcel Adjacent to 9381 E. Vah Ki Inn Rd, Coolidge, AZ 85128," Parcel Id No. 202-27-003Y, which Donald Hugh Nichols and Jane Ann Nichols transferred to the victims on or about August 14, 2017, via quitclaim deed. Value shall be determined either as net proceeds of sale or appraised value less estimated costs and encumbrances.

B. Real property located in Pinal County, Arizona, known as "9381 E. Vah Ki Inn Rd., Coolidge, AZ 85128," Parcel Id No. 202-27-003P, which Donald Hugh Nichols and Jane Ann Nichols transferred to the victims on or about August 14, 2017, via quitclaim deed. Value shall be determined either as net proceeds of sale or appraised value less estimated costs and encumbrances.

C. Real property located in Pinal county, Arizona, known as "1766 W Highway 87, Coolidge, AZ 85128", Parcel ID No. 209-08-006, transferred to the Victims on or about August 14, 2017, via quitclaim deed. Value shall be determined either as net proceeds of sale or appraised value less estimated costs and encumbrances.

D. One (1) 2016 Ford Pickup Truck, VIN 1FT8W3BTGEB05558, transferred to the victims. Value shall be determined as net proceeds of sale.

E. $47,000 representing the proceeds from the sale of the defendant's ownership interest one helicopter, registration number N4153G—to be deposited with the clerk of the court and applied to restitution.

F. $32,291.07 representing that portion of approximately 277 head of cattle sold, on or about October 19-20th, 2017, at Willcox Livestock Auction, Inc, and, on the same or similar dates, a Jordan Cattle Auction, San Saba, Texas, which can be directly traced to or otherwise identified as the subject of auction or other sales from or through MSY—to be deposited with the clerk of the court and applied to restitution.

G. Approximately $24,000 in net proceeds of one single family residence known as 10013 N. Avra Vista Drive, Marana, Arizona—to be deposited with the clerk of the court and applied to restitution.

H. Approximately $53,379.71 in crop insurance proceeds ($19,894.00 and $33,485.71)—to be deposited with the clerk of the court and applied to restitution. The defendant further assures that all competing interests in the rights of the crop insurance are satisfied prior to deposit.

I.  Approximately $11,000, net proceeds from liquidation of IRA and investment accounts—to be deposited with the clerk of the court and applied to restitution.

J.  Defendant specifically assigns his seventeen-point-five percent (17.5%) interest AZ Data Investments, LLC interest to the United States and agrees to cooperate and execute any agreements necessary to complete the assignment-either before or after sentencing. Any funds the government eventually receives from this assignment shall be applied to restitution.

K.  Any and all interest of the defendant in the following entities:
1. SHN Holdings, LLC;
2. Windmill Management Group, LLC;
3. Florence 287, LLC;
4. Nichols Family Enterprises, LLC;
5. JSN Tire Sales, LLC;
6. M and N Trucking, LLC;
7. ~~Gila River Livestock, LLC;~~
8. Windmill Ventures, LLC;
9. Nichols Aviation, LLC;
10. JSN Partners, LLC;
11. SHN Florence 1, LLC; and
12. Any other entity in which Seth Nichols holds an interest.

Defendant warrants that he is the owner or has an interest in the property listed below, and knowingly and voluntarily agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of the above-listed assets covered by this agreement.

Where funds must be deposited with the Court, the defendant specifically agrees to cooperate with the government and jointly file and execute any necessary paperwork needed to have the funds deposited prior to sentencing.

The defendant further agrees that, pursuant to 18 U.S.C. § 3613, all monetary penalties imposed by the Court, including restitution, will be due and payable and subject to enforcement by the government. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the government to enforce the judgment. However, so long as the defendant complies with payment schedules that maybe ordered by the Court, the probation department or the Government, the Government will not take action against defendant's assets. However, if the Defendant either earns; borrows; or is given/gifted assets including land, cash, or interests in any entity or asset, the Government may seek to forfeit/seize the asset for the benefit of the victim.

If defendant participates in the Bureau of Prisons' Inmate Financial Responsibility Program (IFRP) during any period of incarceration, the defendant agrees that payment of criminal monetary penalties imposed by the Court, including restitution, is due during imprisonment at a rate of not less than $25.00 per quarter and shall be paid through the IFRP.

The defendant agrees to cooperate fully with the Government and the United States Probation Office in the identification of assets available to be applied toward restitution in which he has any actual, beneficial, or joint ownership, wherever located, and will execute such documentation, as may be required to locate and secure such assets, as may be deemed necessary by the Government or the United States Probation Office.

## DISCLOSURE OF INFORMATION TO U.S. PROBATION OFFICE

The defendant understands the government's obligation to provide all information in its file regarding defendant to the United States Probation Office. The defendant fully understands and agrees to cooperate fully with the United States Probation Office in providing all information requested by the probation officer.

## EFFECT ON OTHER PROCEEDINGS

I further understand that if I violate any of the conditions of my supervised release, my supervised release may be revoked. Upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

## REINSTITUTION OF PROSECUTION

If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

## WAIVER OF DEFENDANT'S RIGHTS

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel, to be presumed innocent until proven guilty beyond a reasonable doubt, and to appeal.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence.

My guilty plea is not the result of force, threats, assurance or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions.

I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

## FACTUAL BASIS AND SENTENCING FACTOR

I agree that the following facts accurately describe my conduct in connection with the offense to which I am pleading guilty and that if this matter were to proceed to trial the government could prove these facts beyond a reasonable doubt:

**Seth Nichols** began working at Marana Stockyard and Livestock Market, Inc. (MSY) on June 1, 2013 as the Office Manager. **Seth Nichols** handled the day-to-day business operations, which included: collecting incoming payments on accounts receivable (ARs) for livestock from all purchasers, managing and administering all bank accounts for MSY and Parsons Company, and preparing financial statements for the businesses. **Seth Nichols** also was responsible for the custodial account maintenance, which included managing sales proceeds and unpaid ARs in conformance with the USDA regulations, and managing the credit line through Wells Fargo. **Seth Nichols** also ran the Sales Time System, which is the software system used to facilitate the auction on sale day, and reconcile buyer and seller accounts. **Seth Nichols** is the son of Donald Hugh and Jane Nichols, and during this time, he also worked as the manager for Nichols Cattle Co., LLC, or related legal entities. He was responsible for paying for all cattle purchases made by the Nichols Cattle Co., LLC, or related legal entities and managing their bank accounts.

**Seth Nichols** was also responsible for managing the Operations Accounts for MSY. Seth Nichols was also responsible for the accounts for some of the Parsons family's related entities. When Seth was first hired, MSY held a smaller credit line at National

Bank of Arizona, and switched to Wells Fargo in 2015. The line of credit with Wells Fargo was intended to permit MSY to maintain ARs for a short period until buyer/dealers could pay for their cattle purchases. **Seth Nichols** was responsible to provide Wells Fargo proper documentation each month as a borrowing base using outstanding ARs. **Seth Nichols** signed and submitted all borrowing base certificates to Wells Fargo through Wells Fargo's employee, Larry Young. Mr. Young communicated almost exclusively with Seth Nichols about the status of the loan. To the knowledge of Clay Parsons, the majority owner of the company, the Wells Fargo credit line was in good standing with Wells Fargo, and the business had liquidity in its accounts. This was due to false documents provided to him by **Seth Nichols**, which included: profit and loss statements, balance sheets, income statements, and bank statements. From time to time, Larry Young would request that Seth Nichols sign and submit modified borrowing base certificates and/or modified financial reports to support the lending history of Wells Fargo. In those instances, Larry Young would prepare the amended documents and present them to Seth Nichols for signature. In many cases, they were contradicted by financial records previously submitted to Wells Fargo. Nevertheless, Seth Nichols signed and submitted the amended borrowing base certificates, as prepared by Larry Young, and Larry Young accepted them on behalf of Wells Fargo.

On August 4, 2017, Clay Parsons discovered that the line of credit with Wells Fargo had an outstanding balance of nearly $2M, and the liquidity in the operations account was $1.3M less than he was previously informed. This discovery came to light after **Seth Nichols** led Clay Parsons to erroneously believe Clay Parsons' company was in good financial standing. **Seth Nichols** initially claimed the missing money was in uncollected ARs, that he [**Seth Nichols**] was simply not doing his job of collecting, and the money could easily be obtained. Since August 4, 2017, via internal accounting and the help of hired forensic accountants, MSY has found that Nichols Cattle Co., LLC, or related legal entities acquired approximately $1.3-$1.5M in cattle that were not paid from 2015-2017. This account receivable was concealed by **Seth Nichols** fraudulently manipulating the books and records of MSY, and included creation of false documents such as bank statements and wire payments from Nichols Cattle Co., LLC, or related legal entities to MSY.

**Seth Nichols** also provided these false documents to Wells Fargo to keep the line of credit available, which unknowingly to Clay Parsons, were falsely covering Nichols Cattle Co., LLC, or related entities cattle purchases. In some cases, the false statements were requested by Larry Young to support the historical lending practices of Wells Fargo. **Seth Nichols**, in an effort to be compliant with the USDA regulations on custodial account maintenance, drew down the Marana Stockyards line of credit until he exhausted it. Essentially, Nichols Cattle or related legal entities received free cattle which were later sold, without paying MSY. **Seth Nichols** provided Packers

and Stockyard Administration with falsified payment documents purporting to show that Nichols Cattle Co., LLC, or related legal entities, had paid for the cattle.

In an effort to hide his criminal conduct and cover up the line of credit losses **Seth Nichols** provided Clay Parsons and Wells Fargo with false P/L statements, false balance sheets, false income statements, false borrowing base calculations, and false bank statements. In addition to the unpaid cattle purchases and exhausting the line of credit, MSY and the Forensic accountants have discovered an additional preliminary amount in incorrect allocation of money paid to Nichols Cattle Co., LLC, or related legal entities by **Seth Nichols**. These included checks, wires, and ACH payments written to the various Nichols Cattle Co., LLC, or related legal entities.

Date: 2-5-2018



Seth Nichols
Defendant

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including the defendant's waiver of the right to appeal. No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim. P.

Date: 2-5-18

Michael Harwin, Esq.
Attorney for Defendant

## GOVERNMENT'S APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
First Assistant
District of Arizona

Date: 2-5-18

Mike Jette
Assistant U.S. Attorney