**Michael Aaron Harwin, P.C.**
239 North Church Avenue
Tucson, AZ 85701
(520) 624-3500
(520) 624-9207 FAX
michael@michaelharwin.com

**Michael A. Harwin**
Arizona Bar No. 015787
Pima County Computer No. 64916
Attorney for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| United States of America, | ) | No. CR 18-167-CKJ (BGM) |
| Plaintiff, | ) | |
| vs. | ) | **RESTITUTION BRIEF** |
| Seth Nichols, | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Defendant Seth Nichols hereby provides this Restitution brief which may aid the Court in determining correct restitution amount.

## I. BACKGROUND

In September 2018, after the Court ordered a restitution hearing and set a briefing schedule, the Government disclosed about 37,000 pages of financial documents and a two-page "summary of misappropriated assets" [sic] that, in effect, demands restitution, or otherwise constitutes a new loss claim in the amount of **$4,565,777.96** in the aggregate, including new claims for **$1,448,818.00** and **$954,973.28**.[1][2]

---

[1] The Draft Presentence Report (PSR) submitted August 30, 2018, less than three weeks before the new claims were made, indicated that the victims claimed "*total actual loss* of **$2,527,198.88.**" *See PSR August 30, 2018 at ¶ 24.* There is no indication that between August 30, 2019, and September 19, 2018 that MSY or the government contacted the

## II. ARGUMENT

### A. New Claims for $1,448,818.00 and $954,973.28 violate the Plea Agreement

The Government's new restitution and loss claim violates the express language of the plea agreement, which not only limits restitution to three million dollars, but also explicitly limits loss calculations for Guideline purposes to the same amount. *See Plea Agreement at 2:13-16 ("The defendant and the government agree the loss for United States Sentencing Guideline purposes under §2B.1., no more than $3,000,000.00")*.[3] The new claims for **$1,448,818.00** and **$954,973.28,** with a new aggregate claim for restitution and losses of **$4,565,777.96** were disclosed for the first time September 19th, after this court entered an order deny defendant's motion

---

Probation Officer with new information. The Final Presentence Report, submitted October 12, 2018 indicates "the total actual loss computed by the Government and MSY victims was $2,439,084.21." PSR 10/12/18 at ¶ 22. Of that amount, the MSY and the Government claimed that "Nichols failed to authorize $480,000 in commission payments owed to MSY." *Id. at ¶ 20.*

[2] Defendant's forensic accountant, Mr. Shaffer, and the defendant met with the Government and MSY representatives on July 19, 2018, at Mr. Shaffer's office. At that meeting substantial agreement was reached between the parties as to final restitution amounts. The only substantial dispute remaining then was $480,000.00 in commission checks payable to MSY that Mr. Nichols allegedly failed to authorize. The Government has since withdrawn this claim. At the July 19th meeting, however, no one mentioned $954,973.28 or $1,448,818.00 which is principally the subject of this restitution brief.

[3] The Government in its Restitution Memorandum explicitly states that it "seeks a loss determination of $4,565,777.09 ..." *Doc. 39 at 1:18.*

to withdraw from plea agreement.

The new claims for **$1,448,818.00** and **$954,973.28,** with a new aggregate sum claim for restitution and losses of **$4,565,777.96** not only violate the terms of the plea, but so change the nature of the case that it constitutes an intervening cause, and taken separately or in combination with other reasons previously discussed, constitute a fair and just reason to withdraw from the plea, or otherwise require relief.

**B.     The Defendant is unable to meaningfully defend against the new claims for $1,448,818.00 and $954,973.28**

Given their timing, disclosed for the first time on September 19, 2018, and their nature, the defendant is unable to fully analyze, respond to, and defend against such claims without additional disclosure requested, and the subject of a separate motion now pending before this Court. *See also, Preliminary Report, Frederick Shaffer, November 25, 2018, supra, attached as Exhibit 1.*

**1.     *$954,973.28***

The government on September 19th disclosed a new claim for an additional **$954,973.28** in "unknown MSY loss," further characterized as "additional unknown loss yet to be specifically identified, based on an adjusting entry to reconcile Parsons Co. Books to source documents."

The defendant has a due process right to a meaningful "opportunity to contest the facts relied upon to support his criminal penalty." *U.S. v. Sunrhodes* 831 F.2d 1537 (19th Cir. 1987); *see also U.S. v. Helmy*, 951 F. 2d 988 (9th Cir. 1991)(same). He also possesses the due process right to be sentenced based upon reliable information. *See generally United States v. Berry* 553 F.3d 273, 280 (3rd Cir. 2009) (due process requires sufficient indicia of reliability to support its probable accuracy).

The defendant is unable to fully exercise such due process right giving the timing of the claim on September 19th, the timing of the disclosure, also on September

19th, and the nature of the claim, without documents requested, which the government has failed or declined to provide, despite requests, and which are ostensibly within easy access, and which are the subject of a separate Motion for Disclosure, now pending before this Court. *See also Shaffer Preliminary Report, Exhibit 1, supra.*

### 2. *$1,448,818.00*

The government is also claiming that principal payments on the credit line of *$1,448,818.00* create an additional loss. Mr. Shaffer has analyzed the claim and determined that prior payments on the line of credit should not be included in the restitution or loss claim, because it constitutes double counting the loss. *See Preliminary Report, Frederick Shaffer, Exhibit, 1 at 2.* Again, to meaningfully and fully respond, the defendant should be accorded sufficient time to obtain, and analyze requested QuickBooks and primary source documents, which are the subject of a separate Motion for Disclosure, now pending before this Court. *See also Shaffer Preliminary Report, supra.*

**C.     The new claims for $1,448,818.00 and $954,973.28 should be denied as untimely**

The new claims described above, first disclosed September 19, 2018, were never mentioned during the numerous meetings held over the course of prior months, wherein this Court noted, the Government claimed it "has bent over backwards in attempting to resolve the restitution issue." *See Order 9/19/18, Dkt. 35, at 6:14-15 quoting Doc. 25, p.6.* The new claims also were not mentioned at the September 4th hearing on Mr. Nichols Motion to Withdraw from Plea.

One would think that the new claims of **$1,448,818.00 and $954,973.28,** in aggregate **$2,403,791.28**, would not have been discovered by MSY in a matter of weeks. The forensic accountant for MSY had been working on the matter since August 17, 2017, over a year. Moreover, Mr. Shaffer, the defendant's forensic

accountant, met with the government and representatives of MSY on July 19, 2018, ostensibly to finalize restitution amounts, and no mention of the new claims **$1,448,818.00 and $954,973.28** was made. Given their timing, their unexpected nature, the terms of the plea agreement concerning a stipulated loss for Guideline purposes of three million dollars, and the Government's declination or failure to provide QuickBooks documents it claims it provided, as well as source documents, necessary to fully analyze such claims, the new claims **$1,448,818.00 and $954,973.28,** in aggregate **$2,403,791.28**, such be denied as untimely. In the alternative, this Court should order that the government provide requested documents, and accord sufficient additional time for the defendant to complete a full meaningful review, and response.

**D. Restitution should be off-set by any settlement between Marana Stockyards and Wells Fargo below the liquidated sum of principal and interest owed.**

The Government disclosed that Marana Stockyards settled with Wells Fargo over litigation or threatened litigation over the principal line of credit balance due, together with accrued interest. The government has taken the position that the line of credit balance was principally caused by Mr. Nichols' malfeasance, and the defendant using the line of credit to conceal unpaid accounts receivables, $1,647,103.36, for cattle purchased by Nichols family entities which the government has claimed as a restitution amount attributable to Mr. Nichols.

Any settlement amount for less than the principal sum due, together with accrued interest[4] should be deducted from the restitution claims, otherwise Marana

---

[4] The government includes in its restitution claim interest on the line of credit in the amount of $116,663.00.

Stockyards would, in effect, receive double compensation. *See Preliminary Report, Frederick Shaffer, November 25, 2018, supra,* **Exh. 1.** Mr. Nichols has requested such settlement information that could affect the net restitution amount. The Government has argued that such information is "irrelevant." *Doc. 47, at 3:9.* The defendant has moved this Court for disclosure of such information. Such motion is now pending.[5]

### E. Investigative Accounting Fees are not compensable as restitution

The Government has claimed sizable private accounting and attorney fees as part of restitution. However, in *Lagos v. United States,* the Supreme Court recently held that the word "investigation" and "proceedings" under the MVRA, which requires reimbursement for other expenses incurred during participation in the investigation or prosecution for the offense, are limited to government investigations in criminal proceedings, and exclude fees for *private investigations*. 138 S.Ct. 1684 (May 29, 2018).

In *Lagos*, the defendant pleaded guilty to wire fraud for a scheme that involved using false invoices as collateral to defraud a financial institution of tens of millions of dollars in loan proceeds. *Id.* at 1687. At the conclusion of the criminal case, the trial court ordered the defendant to pay restitution to reimburse the victim for a private investigation the victim had conducted after discovering the crime. *Id.*

Part of the restitution order therefore required Lagos "to reimburse GE for expenses GE incurred during its own investigation of the fraud and in participation in related bankruptcy proceedings for a third party entity, touched by the fraud." *Id.* The amount, approximately $5 million dollars, "primarily consist[ed] of professional

---

[5] The Presentence Report (PSR), indicated that Wells Fargo attorneys stated that "[i]n the event that Wells Fargo receives any payment from any source on this loss, the payment will be credited against the loss thereby reducing the amount to be paid by Nichols and/or MSY. *See PSR at ¶ 35.*

fees for attorneys, accountant, and consultants." *Id.*

In reversing the restitution order, however, and holding that under the MVRA a victim may not claim as restitution private investigative fees, the Court rejected the government's argument that because "GE shared with the Government the information that its private investigation uncovered. ... that fact ... should bring the expenses of that investigation within the terms of the statute even if the "investigation" referred to by the statute is a government's criminal investigation." *Id.* at 1690*; see also United States v. Cornelsen* 893 F.3d 1086 (8th Cir. June 28, 2018) (vacating, in light of *Lagos*, "the portion of the restitution order awarding $250,000.00 for the company's account and attorney's fees").

Here, pursuant to *Lagos* the private accounting and attorneys fees associated with the investigation of this matter are not compensable as restitution under the MVRA.

### III. CONCLUSION

For these reasons, the Defendant respectfully requests that the Court (1) preclude or otherwise deny the claims described herein for **$1,448,818.00** and $**954,973.28**; or (2) afford the defendant a reasonable opportunity for to obtain and review requested QuickBooks data, upon which the government relies, primary source documents, and other information, the subject of separate motion now pending before this Court; or (3) allow the defendant to withdraw from the plea agreement, as previously requested, on the basis that the new claims for **$1,448,818.00** and **$954,973.28,** with a new aggregate sum claim for restitution and losses of **$4,565,777.96,** disclosed September 19, violate the terms of the plea agreement which explicitly limits losses for Guidelines purposes to three million dollars, or otherwise so changes the nature of the case that the new claimed loss amount, that such claims, given their timing and their nature, consisting of new claims disclosed for the first

time September 19, 2018 of **$1,448,818.00** and **$954,973.28**, for a new principal loss claim of **$4,565,777.96,** constitutes an intervening cause.

      RESPECTFULLY SUBMITTED this 27th day of November, 2018.

      */s/ Michael A. Harwin*
Michael A. Harwin, Esq.
Attorney for Seth Nichols

Filed with this Court and served on
all parties via the ECF System:

U.S. Attorney's Office